IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


PHILLIP JASON RHOADS,

     Petitioner,

                         No.    CV 16-325 JCH/GBW

v.                                     CR 96-571 JCH

UNITED STATES OF AMERICA,

     Respondent.


**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

     This matter is before the Court on Petitioner's Amended Motion to Vacate, Set

Aside, or Correct Sentence under 28 U.S.C. § 2255 (*doc. 1*)[1] and his subsequent

amendment thereto (*doc. 6*).  Having reviewed the pleadings and record before the

Court, I recommend denying the Motion.

**I.     BACKGROUND**

     On November 3, 1997, Petitioner pled guilty to one count of Possession with

Intent to Distribute More than 100 Grams and More of a Mixture or Substance

Containing Methamphetamines, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 18

U.S.C. § 2, and one count of Carrying a Firearm During and in Relation to a Drug

Trafficking Crime, in violation of 18 U.S.C. § 924(c).  *See cr. docs. 1, 80, 81; see also*

Presentence Report ("PSR") ¶ 3.  The drug trafficking offense carried a mandatory

---

[1] Citations to "*doc.*" refer to docket numbers filed in Case No. 16-CV-325-JCH/GBW.  Citations to "*cr. doc.*" refer to the attendant criminal docket, Case No. 96-CR-571-JCH.  For filings made on both dockets, only the civil docket number is given.

minimum sentence of five years imprisonment and a maximum of forty years imprisonment, and the firearm enhancement carried an additional mandatory five years imprisonment.  PSR at 1, ¶ 41.  After the three-level reduction for acceptance of responsibility under the United States Sentencing Guidelines (U.S.S.G.) §§ 3E1.1(a) and (b)(2) (1997), Petitioner's total offense level was calculated at 27.  PSR ¶ 28. Additionally, the PSR calculated that Petitioner's criminal history category was V.  PSR ¶ 40.

Ordinarily, an offense level of 27 with a criminal history category of V would establish a guideline imprisonment range of 120 to 150 months.  *Cr. doc. 154* at 5. However, as reflected in the PSR, Petitioner had two prior felony convictions for Armed Robbery and Possession with Intent to Distribute Cocaine.  PSR ¶¶ 34, 38, 41.  Because the former conviction was considered a "crime of violence" under U.S.S.G. § 4B1.2(a),[2] and the latter was a controlled substance offense under U.S.S.G. § 4B1.2(b), Petitioner qualified as a career offender under U.S.S.G. § 4B1.1(a).[3]  PSR ¶ 41; *see also cr. doc. 154* at 5-6.  Petitioner's offense level was thus adjusted to 31 under the career offender enhancement because the statutory maximum for his drug trafficking offense was 25 years or more, and his guideline imprisonment range became 188 to 235 months. U.S.S.G. § 4B1.1(b) (1997); *see also* PSR ¶ 68.  After a sentencing hearing, the Court

[2] This provision was amended on August 1, 2016.  The amendment deleted the residual clause discussed herein from the definition of "crime of violence."  The remainder of the definition remained the same. Because it is the relevant provision, references and citations to U.S.S.G. § 4B1.2(a)(2) refer to the pre-2016 amendment version.
[3] Both convictions also satisfied the additional requirements of U.S.S.G. § 4B1.1(c).

imposed a sentence of 188 months.  *See cr. doc. 154* at 6.

Petitioner's Motion argues that his conviction for armed robbery is no properly categorized as a § 4B1.2(a) "crime of violence" in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015).  *See generally doc. 6*.  In *Johnson*, the Supreme Court held that the residual clause of the definition of "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B) – "or otherwise involves conduct that presents a serious potential risk of physical injury to another"—is unconstitutionally vague.  135 S. Ct. at 2563.  Therefore, individuals could not be subject to the ACCA if their underlying prior convictions qualified as "violent felonies" only under the vague residual clause. *Id*.  The Supreme Court announced that *Johnson* would apply retroactively on collateral review in *Welch v. United States*, reasoning that *Johnson* announced a substantive new rule.  136 S. Ct. 1257, 1264-65 (2016).

However, Petitioner was not sentenced pursuant to the ACCA.  Instead, as described above, he received an increase to his sentencing guideline range pursuant to the career offender guideline due to his "two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a).  That guideline provision resulted in a four-level increase to the base offense level pursuant to U.S.S.G. § 4B1.1(b).  As already discussed, the enhancement was based on one prior conviction for a "controlled substance offense," as defined in § 4B1.2(b), and one "crime of violence," as defined in § 4B1.2(a).  *See cr. doc. 154* at 5-6.  The definition of "crime of

3

violence," as used in the career offender guideline, contains a residual clause identical to the residual clause in the ACCA.  *See* U.S.S.G. § 4B1.2(a)(2); 18 U.S.C. § 924(e)(2)(B)(ii).  In order to be entitled to resentencing on the basis that his conviction for armed robbery is not a "crime of violence," Petitioner must first establish that the residual clause of the guideline provision is also unconstitutional for vagueness.  In *United States v. Madrid*, 805 F.3d 1204, 1210-11 (10th Cir. 2015), on direct appeal, the Tenth Circuit indeed held that use of the residual clause in U.S.S.G. § 4B1.2 to calculate and enhance sentencing guideline ranges is unconstitutional because the clause is void for vagueness.  Consequently, the United States has conceded this point.[4]  Next, because Petitioner's motion is a collateral attack on his sentence, he must establish that relief pursuant to *Johnson* and *Madrid* applies retroactively.  Finally, assuming retroactive effect, Petitioner must demonstrate that his sentence was enhanced pursuant to the residual clause of U.S.S.G. § 4B1.2(a)(2).

Petitioner does not contest that his conviction of a controlled substance offense was a valid partial basis for the § 4B1.1(a) enhancement.  *See generally docs. 1, 6.*  Thus, the only issues remaining for the Court to address are the retroactivity of *Johnson*/*Madrid* and whether New Mexico armed robbery still qualifies as a "crime of

---

[4] Though this issue is resolved for the time being in this Circuit, other courts have concluded otherwise. *See e.g.*, *United States v. Matchett*, 802 F.3d 1185, 1193-96 (11th Cir. 2015).  This issue is currently before the Supreme Court in *Beckles v. United States* (S. Ct. No. 15-8544).  Indeed, at oral argument, several Justices appeared to express skepticism about holding the guideline provision unconstitutional on vagueness grounds.  *See* Transcript of Oral Argument at 9-15, *Beckles v. United States* (S. Ct. No. 15-8544) (2016). Obviously, if in *Beckles*, the Supreme Court determines that the guideline provision is not void for vagueness, Petitioner's claim fails.

violence" under U.S.S.G. § 4B1.2(a) without the residual clause.  Because I conclude that New Mexico armed robbery remains a "crime of violence" under the guidelines even absent the residual clause, I need not address the retroactivity question.[5]

## II.   LEGAL STANDARD

While a "crime of violence" justifying a career offender enhancement under the guidelines is distinct from the "violent felony" provision of the ACCA, the Tenth Circuit has instructed that because the definition of the former is "almost identical" to the definition of the latter, "the Supreme Court's analysis under the ACCA 'applies equally to the sentencing guidelines.'"  *United States v. Charles*, 576 F.3d 1060, 1068 n.2 (10th Cir. 2009) (citing *United States v. Tiger*, 538 F.3d 1297, 1298 (10th Cir. 2008)).  The Court may therefore apply relevant precedent regarding one provision interchangeably to the other.

When determining whether a prior conviction constitutes a "crime of violence" under the guidelines, the Court generally employs the categorical approach, which involves "looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions."  *United States v. Perez-Vargas*, 414 F.3d 1282, 1284 (10th Cir. 2005) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)).  However, if the statute defining the prior offense is divisible, the Court will then apply

---

[5] The undersigned still concludes that, for sentences imposed after *United States v. Booker*, 543 U.S. 220 (2005), *Johnson/Madrid* are not retroactive.  *See Valdez v. United States*, Magistrate Judge's Proposed Findings and Recommended Disposition, *doc. 10* at 8-14 in 16-cv-0727 JB/GBW (D.N.M. Dec. 6, 2016).  However, Petitioner's sentence was imposed pre-*Booker*.  That fact significantly impacts the retroactivity analysis.  *See, e.g.*, *Hawkins v. United States*, 724 F.3d 915, 918 (7th Cir. 2013).

what is known as a "modified-categorical approach."  *See Mathis v. United States*, 136 S.

Ct. 2243, 2249 (2016) (explaining that "divisible" statutes are those that "list elements in

the alternative, and thereby define multiple crimes").  Under this approach, the Court

should consult "a limited class of documents (for example, the indictment, jury

instructions, or plea agreement and colloquy)" to determine whether the defendant in a

particular case was convicted of a crime that categorically qualifies as a crime of

violence.  *Id.*

### III.   ANALYSIS

Petitioner argues that his conviction for armed robbery no longer satisfies the

definition of "crime of violence" under U.S.S.G § 4B1.2 after redacting its residual

clause, which the Tenth Circuit held to be unconstitutionally vague in light of *Johnson*.

*See doc. 6* at 6-22.  *Madrid*, 805 F.3d at 1210-11.  Petitioner asserts he is therefore entitled

to resentencing on the basis that the career offender enhancement was

unconstitutionally applied to increase his sentencing guideline range.  *See generally doc.

6.*

As a preliminary matter, Petitioner's conviction of armed robbery clearly does

not qualify as a "crime of violence" under the clause enumerating the specific crimes of

"burglary of a dwelling, arson, or extortion," or those "involv[ing] the use of

explosives."  U.S.S.G. § 4B1.2(a)(2).  Therefore, the pertinent question is whether armed

robbery qualifies as a crime of violence under the "elements clause"—that is, whether

the crime of armed robbery in New Mexico "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]"  *Id.* at (a)(1).  The elements clause of the definition of "crime of violence" under the guidelines is identical to the corresponding clause in the definition of "violent felony" under the ACCA.  *See* 18 U.S.C. § 924(e)(2)(B)(i); U.S.S.G. § 4B1.2(a)(1).  In *Johnson v. United States*, 559 U.S. 133, 140 (2010),[6] the Supreme Court explained that the term "physical force" as used in the ACCA "means *violent* force—that is, force capable of causing physical pain or injury to another person."  (Emphasis in original.)  Nonetheless, the force required to satisfy that element need not be sufficient to cause serious injury—it "might consist . . . of only that degree of force necessary to inflict pain—a slap in the face, for example."  *Id.* at 1272.

    A.  <u>Robbery in New Mexico is a "crime of violence" under the Guidelines.</u>

Petitioner's conviction is based upon a violation of New Mexico's robbery statute, which provides as follows:

> Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, *by use or threatened use of force or violence.*
>
> Whoever commits robbery is guilty of a third degree felony.
>
> Whoever commits robbery while armed with a deadly weapon is, for the first offense, guilty of a second degree felony and, for second and subsequent offenses, is guilty of a first degree felony.

N.M.S.A. § 30-16-2 (1978) (emphasis added).  *See also docs. 16-1, 16-2* (Petitioner's

---

[6] To avoid confusion, this case will be referred to as *Johnson I* to distinguish it from the 2015 *Johnson* opinion striking down the residual clause of the ACCA (hereinafter referred to as *Johnson II*).

indictment and guilty plea relating to the armed robbery charge).

New Mexico courts have held that the "use or threatened use of force" must be against the person of another to satisfy this element. *See, e.g., State v. Bernal*, 146 P.3d 289, 296 (N.M. 2006); *State v. Curley*, 939 P.2d 1103, 1106 (N.M. Ct. App. 1997). For example, the New Mexico Supreme Court has instructed that, in contrast to the statute criminalizing larceny, the robbery statute "is clearly designed to protect citizens from violence . . . . Robbery is not merely a property crime, but a crime against a person." *Bernal*, 146 P.3d at 296. The New Mexico Court of Appeals has similarly explained that the requirement that property be taken with sufficient force "so as to overcome the resistance of attachment" before larceny is elevated to robbery is intended to reflect "the increased danger to the person that robbery involves over the offense of larceny." *Curley*, 939 P.2d at 1106.

The state law jurisprudence regarding the statute instructs that "[t]he use of force, violence, or intimidation is an essential element of robbery." *State v. Lewis*, 867 P.2d 1231, 1233 (N.M. Ct. App. 1993). "The force or intimidation is the gist of the offense." *State v. Sanchez*, 430 P.2d 781, 782 (N.M. Ct. App. 1967). The phrase "or violence," as used in the statute, "do[es] not substantively state an alternative means of committing the offense[.]" *Curley*, 939 P.2d at 1104. New Mexico courts thus use the terms "force" and "violence" interchangeably when discussing whether the force element of the statute has been met by an offense. *See id.*

The force or fear required under the state robbery statute "must be the moving cause inducing the victim to part unwillingly with his property.  It must overcome the victim's resistance.  It must compel one to part with his property.  It must be such that the power of the owner to retain his property is overcome."  *Sanchez*, 430 P.2d at 782 (internal citations omitted).  The "use of force to retain property or to facilitate escape does not satisfy the force element necessary for the crime of robbery."  *Lewis*, 867 P.2d at 1233-34.   Rather, "the use or threatened use of force must be the factor by which the property is removed from the victim's possession."  *Id.* at 1233.  For example, the *Curley* court concluded that the defendant was entitled to an instruction on the lesser included offense of larceny even though he shoved the victim before taking her purse, because the jury could have found that the shove was accidental and independent of the taking, and that the defendant thus "took the purse by surprise from a person who was not resisting, and not by force necessary to overcome any resistance."  939 P.2d at 1107.

Whether the force employed during a larceny is sufficient to elevate the offense to robbery requires an evaluation by the fact-finder.  *See State v. Clokey*, 553 P.2d 1260, 1260 ("The question of whether or not the snatching of the purse from the victim was accompanied by sufficient force to constitute robbery is a factual determination, within the province of the jury's discretion.").  *De minimis* force will not do to sustain a robbery conviction.  *See Curley*, 939 P.2d at 1105 ("[W]hen no more force is used than would be necessary to remove property from a person who does not resist, then the offense is

larceny, and not robbery.").  Mere "touching or jostling," or even the more overtly forceful act of pressing a fist into the victim's back while stealing his property, are all insufficient to establish the force element; such circumstances support only the lesser conviction of larceny.  *Sanchez*, 430 P.2d at 782.  As the *Curley* court explained, "if we remember that the reason for the distinction [between robbery and larceny] is the increased danger to the person" accompanying the crime of robbery, "then an increase in force that makes the victim aware that her body is resisting could lead to the dangers that the crime of robbery was designed to alleviate[,]" such as violent altercations or confrontations.  *Curley*, 939 P.2d at 1106.  In the end, as the Supreme Court of New Mexico has explained, "robbery is a crime designed to punish the use of violence" and "to protect citizens from violence."  *Bernal*, 146 P.3d at 296.

Petitioner argues that the amount of force required under the New Mexico robbery statute is not categorically sufficient to meet the standard outlined in *Johnson I*—that is, "force capable of causing physical pain or injury to another person."  559 U.S. at 140.  *See doc. 6* at 16-22.  In support, he cites to state jurisprudence instructing that "[t]he amount or degree of force is not the determinative factor" in establishing the force element of simple robbery, *State v. Martinez*, 513 P.2d 402, 402 (N.M. Ct. App. 1973), as well as to the committee commentary of the New Mexico jury instruction on simple robbery, which explains that "the amount of force is immaterial."  N.M. R. CR. UJI 14-1620.

To the extent that these authorities suggest that no significant force is required to satisfy the force element of New Mexico robbery, they are contrary to controlling New Mexico jurisprudence on the point.  As cited above, case after case held that robbery requires the force "must overcome the victim's resistance.  It must compel one to part with his property.  It must be such that the power of the owner to retain his property is overcome." *Sanchez*, 430 P.2d at 782 (internal citations omitted); *see also Curley*, 939 P.2d at 1104-06; *Lewis*, 867 P.2d at 1233-34; *Sanchez*, 430 P.2d at 782.  In fact, the *Curley* court explicitly rejected what it described as "dictum" from *Martinez* "that even a slight amount of force, such as jostling the victim or snatching away the property, is sufficient" force for a robbery conviction.  *Curley*, 939 P.2d at 1104 (citing *Martinez*, 513 P.2d at 403).

The Tenth Circuit recently provided a useful reminder of the nature of the relevant inquiry in *United States v. Harris*, __ F.3d __, No. 16-1237, 2017 WL 34458 (10th Cir. Jan. 4, 2017).  In considering whether the Colorado offense of robbery qualified as a "violent felony" under the elements clause of the ACCA, the *Harris* court began its analysis with the "oft-quoted" language from *Johnson I*: "We think it clear that in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person."  *Id*. at *3 (citing *Johnson I*, 559 U.S. at 140) (emphasis in original).  The reminder came next:

11

It is important to keep in mind why it was necessary for the Court to use the language it did.  For it was rejecting the government's argument that physical force means "force" known in common law battery parlance.  *See Johnson I*, 559 U.S. at 139, 130 S. Ct. 1265 ("There is, however, a more specialized legal usage of the word 'force': its use in describing one of the elements of the common-law crime of battery. . . .").  That is, the force element is satisfied by even the slightest offensive touching.  *Id*. (citing among others 3 William Blackstone, *Commentaries on the Laws of England* 120 (1768) [hereinafter Blackstone] ).  So it makes sense that the Court, in construing the meaning of physical force in the ACCA's *violent* felony definition, referenced "a substantial degree of force," "strong physical force," or "powerful force."  Indeed, the Court was differentiating between the force required for the common law offense of battery.

*Id*. at \*4.  This passage serves to emphasize that, by requiring something more than the slightest offensive touching – "a substantial degree of force" – to satisfy the elements clause of the "violent felony" definition, *Johnson I* did not thereby create a requirement of extreme violence.  As *Harris* highlighted, force "capable of causing physical pain or injury" includes "a slap in the face."  *Id*. (citing *Johnson I*, 559 U.S. at 143).  In fact, the court cited with approval Justice Scalia's concurrence which identifies "[h]itting, slapping, shoving, grabbing, pinching, biting, [and] hair pulling" as conduct which qualifies as violent force.  *Id*. (quoting *United States v. Castleman*, 134 S. Ct. 1405, 1421 (2014) (Scalia, J., concurring)).  Moreover, the *Harris* court stressed that "in construing the minimum culpable conduct [required by the state statute], such conduct only includes that [to] which there is a 'realistic probability, not a theoretical possibility' the state statute would apply."  *Id*. at \*3 (citing *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1685 (2013)).

With these standards in mind, the court held that the force required by
Colorado's robbery statute matched the definition of "physical force" set forth in
*Johnson I*.  *Id*. at *4-*9.  Notably, two features of Colorado robbery which were central to
the court's holding are shared in common with the New Mexico crime of robbery.  First,
as in New Mexico, robbery in Colorado requires a taking "*by* violence or intimidation."
*Id*. at *5 (citing *People v. Borghesi*, 66 P.3d 93, 99 (Colo. 2003)) (emphasis added); *see also*
*Lewis*, 867 P.2d at 1233 (emphasis added).  That is, both statutes require that the force (or
threat of force) used must be the means by which the taking is accomplished.  Second,
as in New Mexico, "Colorado's 'robbery statutes are primarily intended to protect
persons and not property.'"  *Harris*, 2017 WL 34458, at *5 (citing *Borghesi*, 66 P.3d at 100-
01); *see also Bernal*, 146 P.3d at 296.  Consequently, both statutes emphasize the
"assaultive nature of the crime[.]"  *Harris*, 2017 WL 34458, at *5.

Admittedly, there are differences between Colorado's and New Mexico's
respective robbery jurisprudence by which one could distinguish *Harris* from the
present case.  However, *Harris* stands for a broader point.  It serves as a reminder that
the definition set forth in *Johnson I* of "physical force," as used in the elements clause of
both the ACCA and U.S.S.G. § 4B1.2(a), encompasses actions falling far short of extreme
violent force in the nature of Hollywood movies.  *Johnson I* did reject the "slightest
offensive touching" common-law standard of "force," instead demanding "a substantial
degree of force."  But even actions like pinching and slapping are sufficiently forceful

13

under *Johnson I* to amount to "violent physical force." To the undersigned, it appears self-evident that the force required for robbery in New Mexico—force which overcomes the victim's resistance and compels the victim to part with his property—is at least commensurate to the slapping adequate under *Johnson I*. Therefore, I conclude that the crime of robbery in New Mexico "has as an element the use . . . of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).

Even if one were to reject this conclusion, New Mexico robbery would still qualify as a "crime of violence" if it "has as an element the . . . *threatened use* of physical force against the person of another." *Id*. (emphasis added). As noted above, New Mexico "robbery is a crime designed to punish the use of violence" and "to protect citizens from violence." *Bernal*, 146 P.3d at 296. This foundation is the basis for the New Mexico requirement that the force used must be sufficient to overcome the "resistance of attachment." *Curley*, 939 P.2d at 1105. As the *Curley* court explained, "[s]ubtle differences in the amount of force used, alone, is neither a clear nor reasonable basis to distinguish the crime of robbery from that of larceny. However, if we remember that the reason for the distinction is the increased danger to the person" accompanying the crime of robbery, "then an increase in force that makes the victim aware that her body is resisting could lead to the dangers that the crime of robbery was designed to alleviate[,]" such as violent altercations or confrontations. *Id*. at 1106. In other words, robbery is distinguished from larceny not just by the force actually used,

but also by the force intrinsically threatened.

The analysis set forth by the *Curley* court regarding the force element of New Mexico robbery directly parallels the rationale in *United States v. Ramon Silva*, in which the Tenth Circuit Court of Appeals held that "apprehension causing" aggravated assault is categorically a "violent felony" under the "threatened use of force" prong of the ACCA elements clause.  608 F.3d 663, 670-71 (10th Cir. 2010).  There, the court reasoned that the conduct proscribed by the offense "threatens the use of '*violent*' force because by committing such an act, the aggressor communicates to his victim that he will potentially use '*violent* force' against the victim in the near [] future," and because such conduct "always has the potential to lead to '*violent* force.'"  *Id.* (quoting *Johnson I*, 559 U.S. at 140) (emphasis in original).  Based upon the reasoning of *Ramon Silva*, the force required to meet the "use of force" element in the New Mexico robbery statute must at the very least satisfy the "*threatened* use of force" portion of the elements clause defining a "crime of violence" under the guidelines.

Based on the foregoing, I conclude that the New Mexico robbery statute "has as an element the use [and the] threatened use of physical force against the person of another" as defined by *Johnson I*.  U.S.S.G. § 4B1.2(a)(1).  Therefore, all crimes of robbery in New Mexico are categorically crimes of violence.[7]  *See also Contreras v. United States*,

---

[7] This conclusion is also supported by the textual history of the ACCA and the Supreme Court's interpretation of its general scope.  As noted above, while a "crime of violence" justifying a career offender enhancement under the guidelines is distinct from the "violent felony" provision of the ACCA, the Tenth Circuit has instructed that because the definition of the former is "almost identical" to the

Magistrate Judge's Proposed Findings and Recommended Disposition, *doc. 12* at 8-18 in

16-cv-0671 RB/SMV (D.N.M. Dec. 6, 2016) (concluding that New Mexico simple robbery

qualifies as a predicate conviction under the elements clause of the ACCA).

Though its decision predates *Johnson I*, the Tenth Circuit Court of Appeals has

reached the same conclusion.  *See United States v. Lujan*, 9 F.3d 890, 891-92 (10th Cir.

1993).  In *Lujan*, the Court of Appeals confronted a defendant convicted of

manslaughter in California and robbery in New Mexico, under the same statute at issue

here.  *Id.* at 891.  In holding that both convictions constitute "violent felonies" under the

ACCA, the court explained: "[The California manslaughter statute] has 'as an element

the use, attempted use, or threatened use of physical force against the person of

another' and thus is a violent felony under the ACCA.  The New Mexico robbery statute

---

definition of the latter, "the Supreme Court's analysis under the ACCA 'applies equally to the sentencing guidelines.'" *United States v. Charles*, 576 F.3d 1060, 1068 n.2 (10th Cir. 2009) (citing *Tiger*, 538 F.3d at 1298).  "Prior to the enactment of the current language, the [ACCA] applied its enhanced sentence to offenders with 'three previous convictions for robbery or burglary.'" *Begay v. United States*, 553 U.S. 137, 143 (2008).  The Supreme Court has explained that Congress changed the language of the statute in order "to *expand* that definition to include both crimes against the person (clause (i)) and certain physically risky crimes against property (clause (ii))." *Id.* at 143-44 (emphasis added); *see also Taylor v. United States*, 495 U.S. 575, 582 (1990) (describing a 1986 amendment to the ACCA as one that "expanded the predicate offenses triggering the sentence enhancement from 'robbery or burglary' to 'a violent felony or a serious drug offense[.]").  Certainly, if generic robbery was originally included and the definition was subsequently expanded, generic robbery would remain within the ambit of the ACCA.  Moreover, as generic robbery is a crime against the person, it would fall within clause (i) of the ACCA – the "force" clause.  Notably, New Mexico's robbery statute is narrower than the uniform generic definition of robbery.  New Mexico still requires that a defendant "must use force before or during the taking itself" in order to commit robbery.  *United States v. Garcia-Caraveo*, 586 F.3d 1230, 1235 (10th Cir. 2009).  This requirement is a relic of the strict common law to which only five states, including New Mexico, still adhere.  *Id.*  In contrast, generic robbery incorporates the more lenient "continuing offense theory"—an act of force or violence committed to facilitate escape suffices to satisfy the force element of robbery.  *See id.* at 1234-37.  Therefore, as generic robbery should remain within the force clause of the ACCA after its expansion, so should New Mexico's narrower version.

also contains the required element of force[.]"  *Id.* at 892 (quoting and italicizing for emphasis the force element of N.M.S.A. § 30-16-2).

B.  Armed Robbery in New Mexico is a "crime of violence" under the Guidelines

While I conclude that simple robbery under New Mexico law qualifies as a crime of violence under the guidelines, Petitioner was convicted of the more serious offense of robbery while armed with a deadly weapon.  This fact further bolsters the conclusion that his conviction was a valid "crime of violence" predicate for the career offender enhancement.

i.  *The New Mexico robbery statute is divisible.*

The New Mexico robbery statute defines the three separate crimes of first degree, second degree, and third degree felony robbery by listing elements in the alternative. *See* N.M.S.A. § 30-16-2.  Unlike third degree (simple) robbery, Petitioner's conviction required proof of the element of being "armed with a deadly weapon" during commission of the offense, elevating it to a second degree felony for the first offense. *See id.*  As such, a conviction of armed robbery carries a different and greater statutory penalty than a conviction of simple robbery.[8]  *See* N.M.S.A. § 31-18-15.  It is thus a divisible statute, and the Court should employ the modified categorical approach in

---

[8] While Petitioner correctly notes in the Statement of Facts of his Motion that he was convicted of armed robbery (*see doc. 6* at 3), he thereafter repeatedly argues throughout his Motion that third degree (simple) robbery is not a crime of violence under the guidelines.  *See id.* at 15-19, 21.  Even if the Court agreed with that conclusion on its merits—which I recommend it should not—such a conclusion does not establish in any event that Petitioner's conviction of second degree (armed) robbery is not a crime of violence under the guidelines, which is the relevant question before the Court.

determining whether armed robbery qualifies as a "crime of violence" under U.S.S.G. §

4B1.2.  *See Mathis* 136 S. Ct. at 2256 (instructing that "[i]f statutory alternatives carry

different punishments, then under *Apprendi* they must be elements.").  This approach

requires the Court to consult the universe of documents including the indictment, plea

agreement and colloquy to determine whether the particular offense of which a

defendant was convicted—here, second degree (armed) robbery in New Mexico—is

categorically a "crime of violence" under the elements clause of the guidelines.  *See*

*Mathis*, 136 S. Ct. at 2249.

During the sentencing hearing, the sentencing judge stated clearly that the

predicate convictions justifying Petitioner's career offender enhancement included

Possession with Intent to Distribute Cocaine and "Armed Robbery in the Second

Judicial District Court, Bernalillo County, New Mexico."  *Cr. doc. 154* at 5-6.  The PSR

also included these specific offenses as the relevant basis for the career offender

enhancement.  PSR ¶ 41.

Moreover, in its briefing on the present Motion, Respondent provided the Court

with the indictment, plea agreement, and judgment associated with Petitioner's armed

robbery conviction.  *See docs. 16-1, 16-2, 16-3.*  The indictment provides in Count 1 that

Petitioner "took and carried away" items of value from another person, "or from his

immediate control, intending to permanently deprive [the victim] of the property, and

was armed with a HANDGUN, a deadly weapon, and took the property by use or

threatened use of force or violence, contrary to [N.M.S.A. §] 30-16-2." *Doc. 16-1* at 1.

The guilty plea provides that Petitioner "agrees to plead guilty to . . . ARMED

ROBBERY (FE), a 2nd degree felony committed on or between March 7, 1995 and March

8, 1995 as charged in Count 1 of the Indictment." *Doc. 16-2* at 1. Finally, the judgment

by the state court plainly stated that Petitioner was "convicted . . . pursuant to a

GUILTY PLEA . . ., of the offense of ARMED ROBBERY (FE), as charged in Count 1 of

the Indictment[.]" *Doc. 16-3* at 1. Thus, each of these documents places the question

beyond doubt that Petitioner was convicted of second degree (armed) robbery rather

than third degree (simple) robbery.

> ii.   *Armed robbery, as an offense independent of simple robbery, is a crime of violence under the guidelines.*

The New Mexico Criminal Code provides the uniform definition of "deadly

weapon" as "any firearm, whether loaded or unloaded; or any weapon which is capable

of producing death or great bodily harm," followed by a list of examples of weapons

that meet this definition. N.M.S.A. § 30-1-12(B). The same statute sets forth the uniform

definition of "great bodily harm" as "an injury to the person which creates a high

probability of death; or which causes serious disfigurement; or which results in

permanent or protracted loss or impairment of the function of any member or organ of

the body." *Id.* § 30-1-12(A).

There can be no doubt that, if use of a deadly weapon during the robbery were

required for a conviction for armed robbery, armed robbery would constitute a crime of

violence under the guidelines.  However, some New Mexico cases suggest that no use of the weapon is required.  *See, e.g.*, *State v. Duran*, 570 P.2d 39, 40-41 (N.M. 1977) (rejecting as "not necessarily true" the State's contention that a jury's finding of guilt on a New Mexico armed robbery charge "necessarily determined that defendant used a firearm," as required to justify a firearm enhancement); *see also State v. Chouinard*, 603 P.2d 744, 745 (N.M. 1979) (distinguishing a statute providing for a sentence enhancement where a firearm is "used" in the commission of a felony from statutes allowing punishment of mere possession and non-use, including the New Mexico armed robbery statute as a specific example, and citing *Duran* for the proposition that firearm "'[u]se' is different from 'possession'").

However, the New Mexico Court of Appeals has made clear that whether the element of having been "armed with a deadly weapon" during the commission of a robbery is satisfied requires more than determining that the defendant merely possessed such a weapon.  *See State v. Hamilton*, 6 P.3d 1043 (N.M. Ct. App. 2000); *see also Lewis*, 867 P.2d at 1232-33 (use of a weapon solely to facilitate escape does not constitute armed robbery where no force is used or threatened to obtain a victim's property prior to escape).  In *Hamilton*, the defendant broke into the victim's home, and began demanding and taking property.  6 P.3d at 1045.  When he entered the home, he did not possess a firearm.  *Id*.  However, during the course of his initial thefts, he found and took a firearm:

>After finding the handgun, Defendant told Means to give him all of her money.  She again told Defendant that she did not have any money, but Defendant reached in[to] Means's purse and found a twenty dollar bill, which he took.  Next, Defendant pointed the gun at Means's abdomen then moved the gun quickly to one side and fired, narrowly missing Means but putting a hole in the couch.

*Id*.

The defendant in *Hamilton* argued that he could not be convicted of armed robbery because he acquired the firearm during the course of the robbery.  *Id*.  In its review of relevant cases, the court reasoned that "the determination of whether a defendant who seizes a weapon during the commission of a robbery is armed 'while' committing the robbery is highly fact sensitive.  When the defendant acquires the weapon and *how he uses it* after its acquisition are paramount."  *Id*. (emphasis added). The *Hamilton* holding could be read as focusing on the meaning of "while."  Under this interpretation, the crucial question would be whether the defendant possessed the firearm at the time the robbery was occurring.  However, if true, "how he uses it after its acquisition" would not be relevant, let alone "paramount."  The court would have considered only when the firearm was acquired and whether the robbery was still in progress.  Instead, *Hamilton* supports the conclusion that mere possession of the firearm during the robbery without any use whatsoever is insufficient for the crime of armed robbery under New Mexico law.

Even assuming without deciding that armed robbery could be committed where a defendant never uses a deadly weapon during the commission of the offense,

Petitioner's conviction is categorically a crime of violence under the guidelines. This is so, first of all, because simple robbery alone satisfies the requirements of the elements clause, as discussed above. Thus, commission of a simple robbery while possessing a firearm without using it also satisfies the requirements of the elements clause.

Secondly, in light of the relevant state law, Petitioner was necessarily convicted of (1) using or threatening the use of force against the person of another, (2) such that the victim's resistance to parting with his property was overcome, (3) while armed with a weapon capable of producing death or great bodily harm. *See* N.M.S.A. § 30-16-2; *Bernal*, 146 P.3d at 296; *Sanchez*, 430 P.2d at 782; N.M.S.A. § 30-1-12(B). Particularly given the possession of a deadly weapon, there is categorically no way for Petitioner to have engaged in such conduct without at the very least "communicat[ing] to his victim that he will potentially use '*violent* force against the victim in the near [] future." *See Ramon Silva*, 608 F.3d. at 670 (quoting *Johnson I*, 559 U.S. at 140). Such an act thus always threatens the use of "force capable of causing physical pain or injury to another person" and therefore meets the *Johnson I* standard.

IV.   **CONCLUSION**

Petitioner's challenge to his sentence under *Johnson II* should be denied. Even assuming the applicability of *Johnson II* to the guidelines, and further assuming that such a rule is retroactive, his criminal history includes one conviction of a controlled substance offense and one conviction of a crime of violence, which trigger the

application of the career offender enhancement under U.S.S.G. § 4B1.1.

Accordingly, I recommend that the Court DENY Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, and dismiss this case with prejudice.

_____
GREGORY B. WORMUTH
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**